## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | NO.  09-cv-01901 TMG.0.. |
| | : | |
| MURTY S. VEPURI | : | APPEAL FROM |
| VARALAXMI VEPURI | : | BANKRUPTCY COURT |
| | | |
| NATIONAL FERTILIZERS, LTD. | : | |
| | : | Chapter 7 |
| v. | : | |
| | : | Case No.  08-11730 |
| MURTY S. VEPURI | : | |
| VARALAXMI VEPURI | : | Adversary No. 08-00156 |

**APPELLANT, NATIONAL FERTILIZERS, LIMITED ("NFL"),
MEMORANDUM IN SUPPORT OF APPELLANT'S APPEAL
FROM THE DECISION OF THE UNITED STATES
BANKRUPTCY COURT, DATED MARCH 25, 2009**

## I.   INTRODUCTORY STATEMENT

The captioned matter represents an appeal of the determination by the

Honorable Bruce I. Fox, United States Bankruptcy Judge for the Eastern

District of Pennsylvania, in which Judge Fox found the underlying debt

dischargeable.

The underlying case from which this appeal is derived stems from an

adversary proceeding filed by plaintiff/appellant, National Fertilizers, LTD.

("NFL") to determine the dischargeability of a $2,000,000.00 judgment

against defendants/debtors/appellee, Marty S. Vepuri and his wife,

Varalaxmi Vepuri ("Vapors").  The judgment itself derived from a jury trial

1

determination that Vapors converted $2,000,000.00 in funds the rightful

entitlement to which was that of NFL. *See* a true and correct copy of the

underlying judgment from the United States District Court for the District

of New Jersey, docketed as *National Fertilizers, Limited v. Marty S. Vepuri*

*and Varalaxmi Vepuri,* U.S.D.C., D.N.J., No. 01-5397 (JAG), attached

hereto as Exhibit "A". Incorporated into Exhibit "A" is a true and correct

copy of the "Verdict Sheet", attached hereto as Exhibit "B".

Consolidated into the adversary proceeding by agreement of the

parties was Vapors' Motion to Avoid Judicial Lien.

The primary issues are whether the doctrine of "claim preclusion"

barred the Bankruptcy Court from re-visiting the testimony in the underlying

case to determine the bases for re-visiting the jury's verdict, and whether or

not the debt, based in intentional conversion, was nondischargeable.

Judge Fox ruled that re-visiting the jury trial transcript was proper and

that, as a result of his assessment of the underlying jury trial, the debt that it

is the subject of this case was dischargeable.

## II.    STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

"The district court, sitting as an appellate tribunal, applies a clearly

erroneous standard to review the bankruptcy court's factual findings and a de

novo standard to review its conclusions of law. *See In re Main, Inc.,*

2

*Debtor. In re Eric J. Blat stein, Debtor. 718 Arch Street Associates, LTD, et al. v. Eric Blat stein, et al.* 1999 U.S. Dist. LEXIS 7559, *9 U.S.D.C., E.D. Pa. 1999).

## III.   STATEMENT OF THE RELEVANT FACTS

Basically, Vapors intentionally converted $2,000,000.00 from NFL. Of this there is no dispute. *See* Exhibit "B".

Clearly, the conversion was carried out in the midst of fraud within the context of civil conspiracy. *See* Exhibit "B".

A comprehensive explanation of the facts is as set forth in the Memorandum of Judge Fox, specifically pages 3, beginning at Judge Fox's introduction: "From these documents, the following material facts are established ... .", to page 10. For purposes of brevity, this examination of the material facts is as set forth in Judge Fox's Memorandum, a true and correct copy of which is attached hereto as Exhibit "C".

Of specific and particular interest in this case are the United States District Court's (for the District of New Jersey) instructions to the jury as follows:

Instruction 8, at page 1568-84 of the trial transcript, reiterated in Judge Fox's Memorandum beginning at page 7:

> "Now, in Count One, plaintiff has raised a claim of conversion against defendants.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods and personal chattels belonging to another ... to the alteration of their condition or the exclusion of an owner's rights.

"To establish a claim of conversion, a plaintiff must prove the following elements:

Number one, that there exists property;
Number two, that the plaintiff has the right to immediate possession of that property; and
Number three, that the defendant has interfered wrongfully with the plaintiff's right to possession of the property."

"The burden of proof is on the plaintiff to establish these elements by a preponderance of the evidence."

Instruction 16, at page 1569, beginning at line 20, through and ending line 25:

"If you find that a party is subjected to conversion and by deceit gives away its property or money to another person based on that other person's wrongful conduct, then the original holder of the property is still considered the owner for the purpose of a conversion claim. In such a case, the transfer of property is still considered unauthorized."

Instruction 17, at page 1570, line 1 through and including line 12:

"Number 17. Conversion is an intentional tort – tort's a fancy word for a civil wrong as opposed to a criminal wrong, okay?

"So conversion is an intentional tort, which means that it is an injury that one party intentionally inflicts upon another. Since conversion is intentional wrongdoing, the law provides that a plaintiff is not barred from recovery merely because of its own carelessness or negligence in the transaction or circumstances leading up to the conversion. Negligence, as used in this context, means less care than

4

that which a reasonable person or company would exercise in their affairs under similar conditions, or like condition."

Instruction 18, at page 1570, line 13 through and including page 1571, line 2, of the trial transcript:

"The elements of good faith, intent or negligence do not play a part in an action for damages in conversion. It is not essential to conversion that the motive or intent with which the act was committed should be wrongful, willful or corrupt. The question of good faith, and the additional questions or elements of motive, knowledge, ignorance, or care or negligence, are not involved in actions for conversion. The state of a person's knowledge with respect to the rights of an owner is of no importance and cannot in any respect affect the case.

"The general rule is that a person who exercises unauthorized acts of dominion over the property of another, in exclusion or denial of another's rights or inconsistent is liable in conversion although the person acted in good faith and in ignorance of the rights or title of the owner."

**"Remember, a tort is a civil wrong, which means that it is an injury that one party intentionally inflicts upon another.** [Emphasis supplied] The law provides that the plaintiff is not barred from recovery merely because of his own carelessness or negligence in the transaction of circumstances leading up to or constituting the fraud."

With regard to damages, the district court, at page 1578, beginning at line 12 to and including line 25, of the trial transcript:

"Now, if you find for plaintiff on any count or counts, then you must consider the issue of compensatory damages on each count. If this occurs, you should award plaintiff an amount of money shown by a preponderance of the evidence to be fair and reasonable compensation for such loss or damages approximately resulted from the wrong done to it.

"For damages to be the proximate result of the wrong, the plaintiff must show that had the defendants not engaged in the conduct you may find wrongful, plaintiff would not have suffered any damage. ... Plaintiff only needs to prove that it has suffered damages by a preponderance of the evidence."

The jury verdict was required to be a unanimous verdict.

*See* the transcript, at page 1580, lines 13 and 14: "Your verdict must be unanimous."

The jury, once situated in the deliberation room, was provided with a "Verdict Sheet" with which the trier of facts unanimously determined that Vapors had committed the intentional tort of conversion. *See* Exhibit "B". Damages were awarded in the amount of $2,000,000.00. *See* Exhibit "B".

Final judgment in the amount of $2,000,000, plus pre-judgment interest, and post-judgment interest at the rate of 3.28%, was entered of record on June 23, 2005.

## IV.   STATEMENT OF THE ISSUES PRESENTED FOR APPEAL[1],[2]

1.     Did the Bankruptcy Court err in determining that the verdict and judgment against the Vapors after the three week trial (from May 4, 2005 to May 25, 2005) did not preclude the Bankruptcy Court from re-

---

[1] The issues on appeal have been refined from the initial presentation.
[2] This appeal only pertains to the lower court's ruling as it relates to 11 U.S.C. 523(a)(6): Intentional, willful, malicious Conversion causing and intending to cause injury.

examining the underlying trial testimony to determine if the intentionally
tortious conversion were willful and malicious under 11 U.S.C. 523(a)(6)?

      2.      Did the Bankruptcy Court err in determining that the jury
findings did not support NFL's claim that the intentional conversion was
willful and malicious, and therefore, the debt was nondischargeable?

## V.    **SUMMARY OF ARGUMENT**

      Clearly, only the bankruptcy court can determine dischargeability.

      However, the bankruptcy court should have self-precluded its
examination of the extensive jury trial testimony, for the jury instructions
and the jury verdict were sufficient within themselves to result in a
determination that the intentional conversion was a willful and malicious act
intended to cause, and causing, injury.

      As stated, the jury instructions correlated with the jury verdict were
quite sufficient to require that the bankruptcy court adhere to these findings
that the intentional conversion was willful and malicious intending to cause,
and causing, injury to NFL.

      The applicable instructions were:

      "So conversion is an intentional tort, which means that it is an injury
that one party intentionally inflicts upon another."

      "If you find that a party is subjected to conversion and by deceit gives
away its property or money to another person based on that other person's
wrongful conduct, then the original holder of the property is still considered

the owner for the purpose of a conversion claim. In such a case, the transfer of property is still considered unauthorized."

**"Remember, a tort is a civil wrong, which means that it is an injury that one party intentionally inflicts upon another. "**

## VI.   **ARGUMENT**

### A.   **Claim (Issue) Preclusion**

The issues relating to conversion in the underlying New Jersey District Court case, correlated with the fact that the trier of fact – the jury – specifically found that all of the elements of conversion were found to have existed and attributable to the actions of the Vapors, as intentional tortfeasors, should have precluded the Bankruptcy Court from re-examining and re-trying the issue of intentional conversion. By the appropriate and applicable standards, to wit:  conversion by the preponderance of the credible evidence, and by the standard of clear and convincing evidence, correlated with the finding of substantial damages, the bankruptcy court should not have re-visited the underlying testimony.

Clearly, the only Court with the inherent power to determine dischargeability is the Bankruptcy Court. However, the United States Bankruptcy Court does not have the inherent authority to revisit a jury's findings, particularly after an extensive jury trial, as in the *Vepuri* United States District Court, District of New Jersey, case. The Bankruptcy Judge

8

does not have the benefit of listening to the extensive testimony,
determining credibility, and otherwise performing functions normally the
province of triers of fact, in this case the jury.

   *Graham v. Internal Revenue Service,* 973 F.2d 1089, 1096 (3d. Cir.
1992), provides an explication of the applicability of issue preclusion, also
referred to as collateral estoppel, beginning with the tenet that only the
United States Bankruptcy Court may make determinations as to
dischargeability.

   However, at page 1097, *Graham* states that the requirements to
establish that issue preclusion is applicable are: "Issue preclusion applies
when (1) the issue sought to be precluded [is] the same as that involved in
the prior action; (2) that issue [was] actually litigated; (3) it [was]
determined by a final and valid judgment; and (4) the determination [was]
essential to the prior judgment. . . ." *See also Wolstein v. Docteroff,* 133
F.3d 210, 219 (3d. Cir. 1997).

   The Bankruptcy Judge did an extensive examination of the testimony
of the witnesses in the Vepuri district court case to determine the jury's basis
for its findings.

   It is appellant's strong opinion that the lower court should be
precluded from performing these jury functions.

The interesting aspect of the *Vepuri* district court case is that, while the jury determined that a[n] [intentional] conversion occurred, and that NFL established that elements of fraud had been proven, the Vepuris were found not to be conspirators.   It can be, however, that the fraud can only be attributed to the only defendants to which such a jury instruction – answered in the affirmative – could have been applicable.  No other persons were named and tried as defendants but the Vepuris.

Appellant asserts that the lower court is estopped from re-visiting these issues by the doctrine of "collateral estoppel", also referred to as "issue preclusion" and "claim preclusion".  *See Goldberg, Dickman & Shalita, P.C. v. Shalita,* 1992 U.S. Dist. LEXIS 16597, *5 (E.D. Pa., Bechtle, 1992)[3].

In the underlying *Vepuri* case, however, the trier of fact specifically found that debtors committed the intentional tort of conversion, and, before the determination that the Vepuris were/were not conspirators, that all of the elements of fraud had been proven by NFL.   Thus, an examination of the extensive underlying record, including the testimony of fact witnesses, is not necessary in this adversary proceeding.  The trier of fact has assessed and

---

[3]Judge Bechtle, in *Goldberg, Dickman & Shalita,* did discuss the obligation of the Bankruptcy Court to fully examine the record as it was unclear whether the underlying arbitration and the findings therefrom supported a determination of fraud.  This appeal is based on a jury verdict after an extensive trial proceeding, not an arbitration

spoken, and the Court, based on those conclusions, issued it final and binding and valid judgment:  An intentional conversion had been effected by the Vepuris; this intentional conversion occurred within the context and presence of all of the elements of fraud.

The lower court must accept the jury's findings, and the district court's ruling in the underlying case.

1.   The issues invoked in this action seeking a declaration of nondischargeability were those specific, relevant,  issues heard and tried in the underlying case.

2.   As stated, those issues were exhaustively litigated, and

3.   Resulted in a final and valid and binding judgment.

4.   The issues that were the subject of the underlying case and are the issues invoked in this adversary proceeding, to wit:  the commission of conversion within the context of fraud, resulting in substantial and intended damages [injury], were essential to the judgment in the underlying case.

The result of the underlying case of *National Fertilizers, Ltd. v. Vepuri* meet the four criteria cited in Graham and therefore preclude this Court from re-litigating the issues of fraud and conversion.

"[A]lthough collateral estoppel (or issue preclusion) principles apply in discharge exception proceedings under 11 U.S.C. § 523(a), *Grogan v.*

*Garner*, -- U.S. --, 111 S. Ct. 654, 658 n.11 (1991), these principles apply only in cases where the prior state-court proceeding actually and necessarily decided those issues sought to be relitigated in the bankruptcy court." *See Goldberg, Dickman & Shalita, supra.*

"Title 11 U.S.C. § 523(a)(2)(A) prohibits the dischargeability of debts obtained by fraud." *See Goldberg, Dickman & Shalita, supra.* At page 7. Plainly and simply put: Vepuris' debt is not dischargeable, as it constituted conversion with the elements of fraud having been agreed to have existed against the only defendants in the case, Vepuris.

Appellant, however, is not arguing that 11 U.S.C. § 523(a)(2(A) is applicable. Appellant accepts the fact that the Vepuris' conversion is nondischargeable vis-à-vis 11 U.S.C. § 523(a)(6).

The applicability of the fraud correlates with the jury's finding of conversion, the jury instructions for which stated that conversion 'is an intentional tort, which means that it is an injury that one party intentionally inflicts upon another." The elements of conversion require that the defendants will have intentionally interfered with the property rights of the

"11 U.S.C. § 523(a) states:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
...

12

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ... ."

"In order for a debt to be declared non-dischargeable under this section, the party seeking an exception must prove intent to cause an injury. [Citation]. The legislative history of § 523(a)(6) is clear. This section was intended to specifically overrule *Tinker v. Colwell,* 193 U.S. 473, 48 L. Ed. 754, 24 Ss. Ct. 505 (1904), which applied a broader standard of 'reckless disregard' in analyzing accusations of willful and malicious conversion in bankruptcy cases. [Citations]." *See United States of America v. Stelwick, et al.,* 108 B.R. 496 (E.D. Pa. 1989).

*Bornstein v. Hyland,* 2000 Bankr. LEXIS 931, *21 (E.D. Pa. 2000):

"Section 523(a)(6) excepts from discharge any debt 'for willful and malicious injury by the debtor to another entity or to the property of another entity.' 11 U.S.C. §523(a)(6). Since the word 'willful' in (a)(6) modifies the word 'injury,' an act must be both willful and malicious in order for the debt to be nondischargeable. [Citation]. In addition, an actor must intend to cause the consequences of his or her act, not merely intend to cause the act itself." Citing *In re Conte,* 33 F. 3d 303, 307-8 (3d. Cir. 1994)."

"The creditor, under the 'willful and malicious' standard, must show not only that the debtor intended to exercise control over the creditor's property, but also that he intended the consequent injury to the creditor's interest in the property. Id. Willful and malicious conversion has been held to be an injury to property within the scope of §523(a)(6). [Citation]"

*See also* the jury instructions synopsis in Section V of this brief, to wit:   "Remember, a tort is a civil wrong, which means that it is an injury that one party intentionally inflicts upon another."

*See also Credit America, Inc. v. Perkins,* 2000 Bankr. LEXIS 784, \*9 (E.D. Pa. 2000): "Under the 'willful and malicious' standard, the debtor must be shown not only to have intended to exercise control over the creditor's property, but to have done so intending the consequent injury to the creditor's interest in the property." [Citation]  Conversion, where willful and malicious, has been held to be an injury to property within the scope §523(a)(6)."

*See* the Jury Instruction 16 at page 1569, lines 20 through and including 25, of the Notes of Testimony in the district court case, referencing "deceit", and incorporating it into the definition of "conversion".

It is not necessary to look at the definition of conversion in the state in which the underlying litigation took place, New Jersey, for the United States District Court for the District of New Jersey, in its instructions, defined "conversion", so we only need to look at the Jury Instructions to determine if the "conversion" of which the debtors were found to be liable, as decided by jury verdict, is defined sufficient to enable its applicability to a nondischarge of a debt vis-à-vis 11 U.S.C. § 523(a)(6).

In an explication of the Congressional intent behind § 523(a)(6), this Court, in *Finberg, et al. v. Lean, et al.,* 18 B.R. 189, 191 (E.D. Pa. 1982), stated:

14

"Conversion is included within definition of willful and malicious

injuries which will be excepted from discharge under the Bankruptcy Code."

124 *Cong. Rec.* S17412 (daily ed. October 6, 1975) (remarks of Sen.

DeConcini) H11096 (remarks Rep. Edwards); [Citations].  In order for a

debt to be non-dischargeable, the conduct of the defendant in effecting the

conversion must be willful and malicious. [Citations]. The definition of

willful includes deliberate or intentional conduct. *H.R. Rep. No.* 595, 95th

Cong. 2d Sess. 363 1978; S. Rep. No. 989, 95th Cong., 2d Sess. 77-79

(1978)."

The district court's instructions in *Vepuri* tells the empaneled jury that

"conversion" is an intentional tort, involving an injury that one intentionally

inflicts upon another. *See* Exhibit "C", page 1570, lines 1 through and

including 6.

Therefore, by the very definition vis-à-vis the jury instructions,

correlated with the jury finding that debtors committed conversion upon the

property of plaintiff, the jury found that the conversion was intentional, and

willful and deliberate.

The conversion, thus, acts to preclude the dischargeability of the debt

that the trier of fact in the underlying district court case found to have been

committed upon the property of plaintiff.

The Bankruptcy Court judge framed his decision with respect to the applicability of 11 U.S.C. § 523(a)(6) to determine the dischargeability of the debt, as follows:  To determine whether issue preclusion will mandate nondischargeability of NFL's claim under section 523(a)(6) in this proceedings, I must consider whether the federal court's jury verdict established all of the elements of willful and malicious conduct on the part of the Vepuris." *See* the Memorandum of Judge Fox, at page 12.

Appellant asserts that NFL well-established that the intentional conversion was willful and malicious, and the explication therefore was quite sufficient to establish the criteria necessary to qualify the conversion as nondischargeable. *See Sullivan v. Clayton,* 195 B.R. 342, 349 (Bankr., E.D. Pa. 1996).  The district court, in the underlying *Vepuri* case, handled the and presented comprehensive and inclusive jury instructions to which the jury responded with a unanimous verdict.  The bankruptcy court has tampering with the clear mandate of the jury's response.

The same Judge Fox as in this case, in *Clemens v. Cobley,* 89 B.R. 446, 451 (Bankr., E.D. Pa., 1987), states:

> "As recently noted by Chief Judge Twardowski of this court, the bankruptcy court decisions in this district have not been fully consistent on whether proof of specific intent to injure the creditor is required to establish malice [a necessary element to establish nondischargeability]....

Our district court has recently given some assistance in this regard. [Citation] Relying on the legislative history and the reading commentator, Judge Broderick concluded, with the majority of courts, that 'a creditor need only prove that a debtor intentionally committed an act, without just cause or excuse, which necessarily produces injury in order to successfully challenge dischargeability under 11 U.S.C. § 523(a)(6)".

One of the most significant cases to determine nondischargeability from an intentional (as opposed to a "technical") conversion, such as the one the Vepuri jury found to have existed, is Corn v. Marks, 192 B.R. 379, 385 (E.D. Pa. 1996, Shapiro, J.)

"Under 11 U.S.C. § 523(a)(6), 'A discharge under … this title does not discharge an individual debtor from any debt – for willful and malicious injury by the debtor to another entity or to the property of another entity. … An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result.'" The key to 'willful and malicious' lies in the intent of the debtor."

At page 387: "The Arbitrators' Award [in Montgomery County] was for a willful and malicious injury. "

See Mileasing Company, Inc. v. Allavena, 31 B.R. 73 (E.D.Pa. 1983).

See also Kawaauhau, et Vir v. Geiger, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d (1998), differentiating "negligent" or "reckless" from intentional, the former dischargeable.

Andrews v. Manson, 99 B.R. 434, (435 9th Cir. BAP, 1989):

"The Ninth Circuit has adopted the recognized notion that for purposes of § 523(a)(6), 'willful and malicious' means a wrongful act done intentionally, which necessarily produces harm and is without

just cause or excuse even absent proof of a specific intent to injure. ...
In the instant case, the appellant's alleged wrongful act was the misuse
and misappropriation of the appellees' funds which amounted to a
conversion."

See also Ford Motor Credit Co. v. Owens, 807 F.2d 1556, 1559-60
(11th Cir. 1987).

With regard to the specific act of conversion, the Ninth Circuit has

adopted the concept that "the conversion of another's property without his

knowledge or consent, done intentionally and without justification and

excuse, to the other's injury, is a willful and malicious injury within the

meaning of the exception."

Thus, "... [T]he issues for purposes of § 523(a)(6) are: 1 -- whether

the appellant committed a wrongful and intentional act; 2 -- whether such

action produced harm; and 3 -- whether such action was without just cause

or excuse."

Merchants National Bank v. Brouillet, et al , 138 B.R. 338, 340

(U.S.D.C., D.Mass 1992), citing the First Circuit in In re Nance, 556 F.2d

602 (1st. Cir. 1977): "There need be no showing of 'special malice' toward

the injured party, only that the act 'is done deliberately and intentionally in

knowing disregard of the rights of another."

The lower court's analysis is appears to be a pre-determined conclusion then supported by the Court's analysis.

11 U.S.C. § 523(a)(6) bars the dischargeability of the judgment against the debtors.

Vepuris took $2,000,000.00 belonging to NFL, intentionally converted it, resulting in the injury to NFL to the extent of $2,000,000.00, and, pursuant to New Jersey law and the district court's application of same within the context of the jury instructions, the conversion was willful and malicious.

## VII   <u>CONCLUSION</u>

The lower court erred in its not applying the doctrine issue/claim preclusion, by its plenary review of the testimony, placing itself as a surrogate for the jury, and determining that the intentional conversion, within the context of fraud, was not willful and malicious.

Appellant, NFL, asks this Honorable Court reverse the decision of the Bankruptcy Court and find that the underlying debt is a nondischargeable debt.

As such, appellant, NFL, further asks this Honorable Court find that the Motion to Avoid Lien should have been denied.

Respectfully submitted:

Stuart A. Eisenberg
Carol B. McCullough
McCullough Eisenberg, LLC
530 West Street Road
Warminster, PA 18974
(215) 957-6411

Attorney for Appellants