IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : |
| MURTY S. VEPURI, | : |
| VARALAXMI VEPURI | : |
| | : CIVIL ACTION |
| Debtors, | : |
| | : NO. 09-CV-1901 |
| NATIONAL FERTILIZERS, LTD. | : |
| | : |
| Plaintiff/Appellant, | : |
| | : |
| v. | : |
| | : |
| MURTY S. VEPURI | : |
| VARALAXMI VEPURI | : |
| | : |
| Defendants/Appellees | : |

**MEMORANDUM OPINION AND ORDER**

GOLDEN, J.                                                                                                           MARCH 31, 2010

Before the Court is an appeal from the Order of the Bankruptcy Court on March 25, 2009, holding dischargeable the Debtors/Defendants/Appellees Murty S. and Varalaxmi Vepuri's (the "Vepuris") debt owed to Plaintiff/Appellant National Fertilizers, Ltd. ("NF"). For the following reasons, the Court will affirm the Bankruptcy Court's Order.

**I.     BACKGROUND AND JURISDICTION**

The relevant facts are set forth at length in the Bankruptcy Court's Memorandum, see In re Vepuri, Bankruptcy No. 08-11730bf, 2009 WL 2921305, at *1-5 (Bankr. E.D. Pa. Mar. 25, 2009), and shall not be reiterated here in toto. It bears repeating, however, that NF originally brought a five-count complaint against the Vepuris, alleging fraud, conversion, unjust enrichment, "imposition of a constructive trust," and civil conspiracy in the United States District Court for the District of New

Jersey. At the jury trial, NF withdrew its fraud claim, noting that it was not alleging that the Vepuris made any misrepresentations, and declined to submit its imposition claim to the jury. As a result, NF only sought judgment upon its conversion, unjust enrichment, and civil conspiracy claims. Thereafter, the jury, found the Vepuris liable for conversion and unjust enrichment,[1] and awarded NF $2 million in damages in May 2005.

Subsequently, NF filed a complaint in the United States Bankruptcy Court for the Eastern District of Pennsylvania, contending that its $2 million award was nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). NF later elected to pursue the action under only Section 523(a)(2)(A)[2] and (a)(6).[3] At trial, NF introduced evidence from the New Jersey trial to establish these claims, including: (1) a copy of the original trial transcripts; (2) a copy of the docket entries; (3) a copy of NF's seconded amended complaint; (4) a copy of the jury verdict; and, (5) a copy of the judgment.

On March 25, 2009, the Bankruptcy Court issued a Memorandum Opinion and Order holding the Vepuris' New Jersey judgment debt dischargeable. Addressing NF's Section 523(a)(6) claim, Judge Bruce Fox, noting the parties' reliance upon the New Jersey jury's verdict, reviewed the verdict and the trial transcripts and determined that although the jury found the Vepuris' acceptance

---

[1] Additionally, the jury explicitly held that although a civil conspiracy defrauded NF, NF had not established that the Vepuris were members of that conspiracy. (Ex. B to NF's Brief, ¶¶ 7-9.)

[2] An otherwise dischargeable debt will not discharge if it is obtained by "false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A).

[3] An otherwise dischargeable debt will not discharge if it is acquired as a result of a willful and malicious injury caused by the debtor to another party. 11 U.S.C. § 523(a)(6). To establish the applicability of this exception, the creditor must show that the debtor actually intended to injure the creditor or its property, not simply that the debtor's deliberate or intentional acts resulted in injury. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). Negligence and recklessness do not establish willful and malicious conduct. Id. at 64 (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 (1934)).

and retention of NF's funds intentional, the jury did not have to conclude that the conversion was willful and malicious, or that the Vepuris even knew the funds were NF's property. In re Vepuri, 2009 WL 2921305, at *9. Moreover, Judge Fox stated, inter alia, that NF could not prevail on its Section 523(a)(2)(A) claim because the jury clearly held that any fraud perpetuated against NF was committed not by the Vepuris, but by other individuals. Id. at *10-11; see also (Ex. B. to NF's Brief, ¶¶ 7-9.)

On May 4, 2009, NF appealed the Bankruptcy Court's Order of March 25, 2009, to this Court. This Court has jurisdiction over appeals of final judgments and orders of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). "In considering such bankruptcy appeals, the district courts are thus generally required to review the bankruptcy court's findings of fact for clear error and apply plenary review to its conclusions of law." In re South Canaan Cellular Investments, LLC, No. 09-CV-2840, 2009 WL 3682338, at *4 (E.D. Pa. Nov. 3, 2009) (citations omitted). "[D]etermining dischargeability of debt arising from willful and malicious injury is a question of law." In re Granoff, 250 Fed. Appx. 494, 495 (3d Cir. 2007) (citing In re Gerhardt, 348 F.3d 89, 91 (5th Cir. 2003)).

## II. ANALYSIS

In the appeal before the Court, NF contends that the Bankruptcy Court erred in ruling that the Vepuris' judgment debt is dischargeable[4] pursuant to Section 523(a)(6).[5] In support of its

---

[4]NF must establish nondischargeability by a preponderance of the evidence. In re Burke, 416 B.R. 136, 143 (Bankr. E.D. Pa.. 2009) (quoting 11 U.S.C. § 523(a)(6)).

[5]NF's appeal is limited to the Bankruptcy Court's ruling on the Section 523(a)(6) claim. (NF's Brief at 6 n.2.) NF did not challenge Judge Fox's conclusion as it pertains to the Section 523(a)(2)(A) claim.

contention, NF states that the New Jersey jury's verdict confirms that the Vepuris inflicted a willful and malicious injury upon NF, and that the Bankruptcy Court violated the collateral estoppel doctrine[6] by holding otherwise. The Vepuris, on the other hand, assert that the Bankruptcy Court correctly concluded that the jury verdict did not demonstrate that NF's injury was willful and malicious, and that, because the verdict was the only evidence introduced to establish that the injury was willful and malicious, there was no basis to find that their debt was not dischargeable.

In the original trial, "the jury found both Vepuris liable for conversion and unjust enrichment, and assessed damages on both counts in the amount of $2 million." In re Vepuri, 2009 WL 2921305, at *5 (internal citations omitted). As to conversion, the trial judge's jury instructions read, in pertinent part, as follows:

> [C]onversion is an intentional tort, which means that it is any injury that one party intentionally inflicts upon another. Since conversion is intentional wrongdoing, the law provides that a plaintiff is not barred from recovery merely because of its own carelessness or negligence in the transaction or circumstances leading up to the conversion . . . .
>
> *. . . The elements of good faith, intent or negligence do not play a part in an action for damages in conversion. It is not essential to conversion that the motive or intent with which the act was committed should be wrongful, willful*

---

[6] The doctrine of collateral estoppel, also known as issue preclusion, "bars relitigation of issues that have been adjudicated in a prior action. Mclaughlin v. Fisher, 277 Fed. Appx. 207, 213 (3d Cir. 2008) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980); Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). "The doctrine ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits . . . involving a party to the prior litigation.'" Di Loreto v. Costigan, 600 F. Supp. 2d 671, 689 n.12 (E.D. Pa. 2009) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). "'The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application.'" Id. (quoting Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000)). A party will be estopped from relitigating an issue where: (1) the issue sought to be precluded is identical to the one presented in a prior action; (2) the issue was actually litigated; (3) a valid and final judgment was rendered on the issue; and, (4) the determination was essential to the prior judgment. Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 01-CV-0485, 2010 WL 773119, at *7 (M.D. Pa. Mar. 2, 2010) (quoting Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007)).

> *or corrupt. The question of good faith, and the additional question or elements of motive, knowledge, ignorance, or care or negligence, are not involved in actions for conversion. The state of a person's knowledge with respect to the rights of an owner is of no importance and cannot in any respect affect the case.*
>
> The general rule is that a person who exercises unauthorized acts of dominion over the property of another, in exclusion of another's rights or inconsistent [sic] is liable in conversion although the person acted in good faith and in ignorance of the rights or title of the owner.

Id. at 4 (citation omitted) (emphasis added). NF maintains that any verdict levied pursuant to these instructions was predicated on NF's suffering a willful and malicious injury,[7] and that the collateral estoppel doctrine barred Judge Fox from making a conflicting determination. The Court disagrees. The Bankruptcy Court correctly determined that, in accordance with New Jersey law,[8] the instructions clearly informed the jury that it need not find that the Vepuris' actions were wrongful, willful, or in bad faith to find them liable for conversion. In other words, the jury's finding that the

---

[7]NF seems to suggest that the First, Ninth, and Eleventh Circuits consider conversion inherently willful and malicious. See (NF's Brief at 18 (citations omitted).) However, this notion is incorrect; courts in these circuits clearly follow the same legal principles adopted herein. See, e.g., In re Ormsby, 591 F.3d 1199, 1206-07 (9th Cir. 2010) (citations omitted); In re Peklar, 260 F.3d 1035, 1037-38 (9th Cir. 2001) (citations omitted); In re Wolfson, 56 F.3d 52, 54 (11th Cir. 1995) (citations omitted); In re Cone, 2009 WL 1089463, at *4 (Bankr. S.D. Fla. Apr. 21, 2009) (citations omitted); In re Romano, 385 B.R. 12, 30-31 (Bankr. D. Mass. 2008) (citations omitted); In re Burke, 354 B.R. 579, 583 (D. Mass. 2006) (citations omitted); In re Coccia, 351 B.R. 17, 21 (Bankr. D.R.I. 2006) (citations omitted).

[8]Although conversion is an intentional tort, "[t]he defendant need not knowingly or intentionally act wrongfully for a conversion to occur." Joseph Oat Holdings, Inc. v. RCM Digesters, Inc., No. 06-CV-4449, 2009 WL 3334868, at *10 (D.N.J. Oct. 14, 2009) (citing LaPlace v. Briere, 962 A.2d 1139, 1144 (N.J. Super. Ct. App. Div. 2009)). Other courts have held that a party may be liable for an intentional tort without acting in a willful and malicious manner. See Kawaauhau, 523 U.S. at 63-64 ("[N]ot every tort judgment for conversion is exempt from discharge.") (citing Davis, 293 U.S. at 332); In re Conte, 33 F.3d 303, 305 (3d Cir. 1994) ("An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result."); In re Burke, 416 B.R. at 143 ("Intentional torts generally require that the actor intend 'the *consequences* of the act,' not simply 'the act itself.'") (quoting Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis in original)).

Vepuris converted NF's property, and were unjustly enriched by the conversion, did not necessarily indicate that the Vepuris intended to willfully and maliciously injure NF.

The Court also notes that the record evidence does not indicate that the Vepuris knew that NF rightfully owned the $2 million in their possession or that their receipt of the funds advanced the interests of an illegal enterprise.[9] Mr. Vepuri convincingly testified that he was uncertain that the funds he received belonged to NF and did not know that Karsan Danismanlik Turizm Sanayi Ticaret Ltd. Sti. ("Karsan") was not entitled to the $2 million. He also testified that although he was aware of a dispute between Karsan and NF, he was informed that they were embroiled in a contractual dispute, not that NF was the victim of fraud. A willful and malicious injury cannot be established absent such knowledge. See In re Blanchard, 201 B.R. 108, 118 (Bankr. E.D. Pa. 1996) ("[T]o be nondischargeable the claim must not be founded upon a mere technical conversion, without conscious intent to violate the rights of another, and under mistake or apprehension . . . .") (citations and internal quotations marks omitted).

NF argues that the conversion in question occurred "within the context of fraud," and that the Court must characterize the Vepuris' conduct as willful and malicious as a result. This contention is disingenuous; the jury plainly determined that the Vepuris played no role in the fraudulent civil conspiracy. The Court is skeptical of NF's attempt to hold the Vepuris responsible for other individuals' fraudulent actions. Moreover, NF voluntarily withdrew its fraud claim; NF may not establish nondischargeability based upon a previously ceded theory. These facts significantly mitigate if not negate any claim that the Vepuris willfully and maliciously injured NF

---

[9]This Court may affirm the Bankruptcy Court's decision on any alternate grounds supported by the record. In re Kahn, 133 F.3d 932 n.7 (10th Cir. 1998) (citing In re Sampson, 997 F.2d 717, 721 (10th Cir. 1993)).

or its property.

Therefore, because the evidence did not establish that the jury determined that the Vepuris acted with willful and malicious intent, Judge Fox was not estopped from determining that the Vepuris failed to act with the intent necessary to render the debt nondischargable. Insofar as the Vepuris' intent is concerned, the collateral estoppel doctrine is not applicable because the jury did not render a final judgment on that issue. Far from being estopped from looking at the trial transcripts and jury's verdict in the underlying New Jersey case, Judge Fox was required to examine them to determine whether the Vepuris' conduct, as presented to him, rendered the debt nondischargable. Thus, the Court can find no error in Judge Fox's conclusion that the debt was dischargeable because NF failed to substantiate its claim that the Vepuris willfully and maliciously converted NF's property.

The Court will affirm the Bankruptcy Court's Order. An appropriate Order follows.